# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF VIRGINIA
# ABINGDON DIVISION

| | |
|---|---|
| DONALD R. ADKISON,<br>    Plaintiff<br><br>v.<br><br>BEN FRIZZELL, d/b/a WOLF HILLS<br>  SHOPPING CENTER,<br>    Defendant | )<br>)<br>) **REPORT AND**<br>) **RECOMMENDATION**<br>)<br>) Case No. 1:11cv00089<br>)<br>) By: PAMELA MEADE SARGENT<br>) UNITED STATES MAGISTRATE JUDGE |

This matter is before the undersigned on the Motion For Summary Judgment filed by defendant Ben Frizzell,[1] d/b/a Wolf Hills Shopping Center, ("Frizzell"), (Docket Item No. 12), ("Motion"). After failing to timely respond to the Motion, in accordance with the Amended Scheduling Order, this court entered an order stating that the Motion would be treated as unopposed. (Docket Item No. 18). Thereafter, plaintiff's counsel filed a motion stating that the Motion was not unopposed and asked the court to be heard on the Motion. (Docket Item No. 19). The court denied plaintiff's counsel's motion, canceled the hearing scheduled on the Motion and gave plaintiff's counsel 14 days to file written arguments. (Docket Item No. 20). The court further advised plaintiff's counsel that if written arguments were filed, it would be plaintiff's counsel's responsibility to coordinate a new hearing date. Thereafter, plaintiff's counsel filed written arguments, but did not request a hearing. (Docket Item No. 23). The court also has not been contacted regarding scheduling such a hearing. That being the case, the court will dispense with such a hearing and decide the Motion based on the written

---

[1] The defendant's correct name is Ben M. Frizzell, Jr.

1

submissions of the parties. The Motion is before the undersigned magistrate judge by referral, pursuant to 28 U.S.C. § 636(b)(1)(B). Based on the arguments and representations presented, and for the reasons stated in this Report and Recommendation, the undersigned is of the opinion that the Motion should be denied.

## I. Facts[2]

Frizzell is the owner and operator of a shopping center located in Abingdon, Virginia, in Washington County, known as Wolf Hills Shopping Center, ("Wolf Hills"). On January 20, 2011, a snow storm occurred in Washington County resulting in the accumulation of snow and ice on the Wolf Hills parking lot. Adkison manages a business that is responsible for clearing the snow and ice from six properties belonging to a large local business. On January 21, 2011, Adkison began clearing snow and ice from the walkways and parking lots of these properties at 5:00 a.m. and had all of them cleared by approximately 8:15 a.m. After scraping and salting the properties, any remaining icy areas began to melt. At approximately 8:15 a.m., Adkison drove to the Roses department store, located in Wolf Hills, arriving there at approximately 8:30. It did not appear to Adkison that the parking lot had been given snow and ice clearing treatment. Adkison observed that the sun was shining and that the temperature had risen above the freezing mark. When he realized that the store did not open until 9:00 a.m., he left Wolf Hills and made one more sweep of the properties that he had previously cleared. Adkison examined the properties closely, noting that they appeared to be

---

[2] For purposes of the disposition of this Motion, the facts as set forth herein are construed in the light most favorable to Adkison, the nonmoving party. *See Ross v. Commc'ns Satellite Corp.*, 759 F.2d 355, 364 (4th Cir. 1985).

melting well and simply appeared to be wet asphalt.  He returned to Wolf Hills at approximately 10:10 a.m. and observed that the conditions had improved immensely.  Adkison assumed that in the hour and a half that he had been gone, the parking lot had been cleared in accordance with the same standards he utilizes in his business.  Adkison noted that the temperature had not decreased in the hour and a half that he had been gone, and the sun continued to shine onto the parking lot.

As Adkison pulled into the parking space, he answered a phone call from his eight-year-old daughter on his Bluetooth.  While speaking with his daughter, he placed his vehicle, a 2004 Chevrolet Tahoe, in park, and with the engine still running, he opened the door and held it open with his left foot, looking down at the parking lot.  He observed what appeared to be "wet asphalt," what he states that he had seen most of the morning at the locations that he had been clearing.  Adkison turned off the engine, grabbed his phone and exited the vehicle.  Because Adkison is approximately 5'4" tall, he has to drop about 10 inches to land on his left foot when exiting the Tahoe.  When he landed on his left foot in the Wolf Hills parking lot, it slid out from under him, he dropped straight down and struck his hip on the running board of his vehicle, fracturing his hip and femur before coming to rest on his back.  After much difficulty retrieving his phone from underneath his vehicle, Adkison realized that he was on a large patch of "black ice" and that the parking lot had obviously not been treated with salt, other melting chemicals or anything to provide traction.  He finally was able to get into his vehicle, but was unable to move much for a few minutes due to intense pain.

While in his vehicle, Adkison saw a man park about three parking spaces away and nearly fall when he got out of his vehicle, stopping himself only by

3

grabbing onto his door with both hands. Although this man asked Adkison if he needed help, he declined because he thought that the pain would subside. However, at approximately 10:40 a.m., Adkison called his wife to come and take him to the emergency room. He noticed that the row of parking spaces in the next aisle was dry, so he pulled his vehicle into that row to wait for his wife. When Adkison's wife arrived, she entered the Roses store to let the manager know that Adkison had fallen, and she asked for some help getting him into her vehicle. Adkison's wife said that the store manager stated that Frizzell Construction, the company responsible for snow and ice removal at Wolf Hills, had been called several times that morning to remove the snow and ice and that three people already had fallen in the parking lot that morning. Adkison stated that given the conditions he worked in that morning, the ice had been there at least five hours. He stated that while he worked, the conditions improved and that it did not snow or freeze between 8:30 a.m. and 10:10 a.m.

On November 28, 2011, Adkison filed a Complaint against Frizzell in Washington County Circuit Court alleging that Frizzell was negligent in allowing the accumulation of snow and ice to remain on the Wolf Hills parking lot for hours after the snow ended and more than an hour after the Roses store opened for business, despite the fact that its agents and employees knew, or should have known, that the condition of the parking lot was extremely hazardous. On December 19, 2011, Frizzell filed a Notice of Removal to this court. In the Motion, Frizzell argues that summary judgment should be granted in his favor on the following grounds: (1) Adkison has failed to show that Frizzell had actual or constructive notice of the existence of ice on the parking lot; (2) the ice on the parking lot was an open and obvious hazard; and (3) Adkison assumed the risk of slipping and falling.

4

## II. Analysis

With regard to a motion for summary judgment, the standard of review is well-settled. The court should grant summary judgment only when the pleadings, responses to discovery and the record reveal that "there is no genuine issue as to any material fact and … the movant is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(a); *see, e.g., Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986); *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986). A genuine issue of fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248.

In considering a motion for summary judgment, the court must view the facts and the reasonable inferences to be drawn from the facts in the light most favorable to the party opposing the motion. *See Anderson*, 477 U.S. at 255; *Matsushita*, 475 U.S. at 587. Thus, the court will view the facts and inferences in the light most favorable to the plaintiff on the defendant's Motion. In order to be successful on a motion for summary judgment, a moving party "must show that there is an absence of evidence to support the non-moving party's case" or that "the evidence is so one-sided that one party must prevail as a matter of law." *Lexington-South Elkhorn Water Dist. v. City of Wilmore, Ky.*, 93 F.3d 230, 233 (6th Cir. 1996).

Federal courts sitting in diversity, as here, must apply the choice of law provisions of the forum state. *See Klaxon Co. v. Stentor Elec. Mfg. Co., Inc.*, 313 U.S. 487, 496-97 (1941); *Erie R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938). Here, Virginia is the forum state. In Virginia, liability for tort depends upon the law of

5

the place of injury. *See Lachman v. Pa. Greyhound Lines, Inc.*, 160 F.2d 496, 500 (4th Cir. 1947). Since Adkison was injured in the Wolf Hills parking lot in Abingdon, Virginia, Virginia law is controlling.

Under Virginia law, the rules applicable to slip-and-fall cases are well-settled. *See Winn-Dixie Stores, Inc. v. Parker*, 396 S.E.2d 649, 650 (Va. 1990) (citing *Colonial Stores, Inc. v. Pulley*, 125 S.E.2d 188 (Va. 1962)). A person is an invitee when the landowner has extended an express or implied invitation to the visitor, and the visitor enters pursuant to the invitation. *See Bauer v. Harn*, 286 S.E.2d 192, 194-95 (Va. 1982). As such, Adkison was an invitee in the Wolf Hills parking lot, and Frizzell owed him a duty of ordinary care and prudence. *See Shiflett v. M. Timberlake, Inc.*, 137 S.E.2d 908, 911-12 (Va. 1964). In discharging this duty, a landowner is required to have the premises in a reasonably safe condition for its visitors and to warn them of any unsafe condition that is known, or by the use of ordinary care, should be known to the landowner. *See Fobbs v. Webb Bldg. Ltd. P'ship*, 349 S.E.2d 355, 357 (Va. 1986). Open and obvious dangers that are patent to a reasonable person exercising ordinary care for his own safety do not require a warning. *See Trimyer v. Norfolk Tallow Co.*, 66 S.E.2d 441, 444 (Va. 1951).

However, the duty of ordinary care and prudence does not make a landowner an insurer of the safety of its customers. *See W.T. Grant Co. v. Webb*, 184 S.E. 465, 466 (Va. 1936) (quoting *Turner v. Carneal*, 159 S.E. 72, 73 (Va. 1931)). In the absence of any evidence tending to show that a landowner or his servants or agents knew, or should have known by the exercise of reasonable diligence, of the defect or unsafe condition, the landowner will not be liable to a customer for injuries caused by some defect or unsafe condition in the premises. *See Safeway*

6

*Stores, Inc. v. Tolson*, 121 S.E.2d 751, 753 (Va. 1961). It is the plaintiff's responsibility to introduce such evidence of the landowner's actual or constructive knowledge of a defective condition on the premises to establish a prima facie case of negligence. *See Roll 'R' Way Rinks, Inc. v. Smith*, 237 S.E.2d 157, 161 (Va. 1977). "Actual notice can be proved by showing the defendant or one of its agents created the defect or knew of its existence." *Shipp v. Boddie-Noell Enters., Inc.*, 2007 WL 1097894, at *3 (W.D. Va. April 12, 2007) (citing *Winn-Dixie Stores, Inc.*, 396 S.E.2d at 651; *Colonial Stores, Inc.*, 125 S.E.2d at 190). A plaintiff proves constructive notice of a condition by showing that the defect was noticeable and had existed for a sufficient length of time to charge its possessor with notice of its defective condition. *See Grim v. Rahe, Inc.,* 434 S.E.2d 888, 890 (Va. 1993). If a plaintiff is unable to show when a defect occurred on the premises, he has not made out a prima facie case for constructive notice. *See Grim*, 434 S.E.2d at 890.

Thus, it follows that to ascertain whether there is a genuine issue of material fact as to Adkison's negligence claim, the court must evaluate the evidence presented on Frizzell's actual or constructive notice of the hazardous condition. Adkison, in an affidavit attached to his responses to the defendant's interrogatories, testified that the Roses store manager, Susan Payne, told Adkison's wife that either she or other store employees,[3] had called Frizzell Construction, the company that managed their snow and ice removal operations, several times that morning.[4] (Attachment 1 to Docket Item No. 13, ("Adkison Affidavit"), at 5). In his affidavit attached to the Brief In Opposition Of Motion For Summary Judgment, Adkison

---

[3] The affidavit states that Payne told Adkison's wife that "they" had called Frizzell Construction. (Adkison Affidavit at 6).

[4] The defendant does not assert that Frizzell Construction is not an entity related to him, and it is reasonable to infer that Frizzell Construction is such an entity.

7

testified that he later learned that the owner had been notified of the unsafe conditions in the parking lot. (Attachment 1 to Docket Item No. 23, ("Adkison Affidavit 2"), at 3). Additionally, Adkison testified in his affidavits that the store manager informed his wife that three other people already had fallen in the parking lot that morning.[5] (Adkison Affidavit at 5; Adkison Affidavit 2 at 3). This is the only evidence of actual notice by the defendant presented to the court. However, the defendant is correct that on summary judgment the nonmoving party's evidence cannot be hearsay. *See Evans v. Techs. Applications & Serv. Co.*, 80 F.3d 954, 962 (4th Cir. 1996). Instead, the nonmoving party must submit "admissible evidence" and be "based on personal knowledge." *Evans*, 80 F.3d at 962. The statement of Payne, the Roses manager, to Adkison's wife that Frizzell Construction had been called several times that morning to remove snow and ice from the parking lot, constitutes inadmissible hearsay and may not be considered by the court in deciding the Motion. Likewise, Adkison's statement in his second affidavit, that he later learned that the owner had been notified of the unsafe conditions in the parking lot, evidences that he did not have personal knowledge of such. It is for these reasons that I find that Adkison has failed to establish that Frizzell had actual notice of the hazardous condition of the parking lot.

As stated above, constructive notice of a defective condition of a premises may be shown by evidence that the defect was noticeable and had existed for a sufficient length of time to charge its possessor with notice of its defective condition. *See Grim*, 434 S.E.2d at 890 (citing *Colonial Stores, Inc.,* 125 S.E.2d at 190). Therefore, if the evidence fails to show when a defect occurred on the premises, the plaintiff has not made out a prima facie case. *See Grim*, 434 S.E.2d at 890 (citing *Winn-Dixie Stores, Inc.*, 396 S.E.2d at 651). The defendant relies on

---

[5] It is not clear whether Frizzell had been informed of these falls.

8

*Cannon v. Clarke*, 167 S.E.2d 353 (Va. 1969), and *Harris v. Wal-Mart*, 2006 U.S. Dist. LEXIS 4476 (W.D. Va. Feb. 6, 2006), both slip-and-fall cases involving snow and ice, for the proposition that, in order to establish constructive notice, a plaintiff must show how long the ice or snow existed. In *Cannon*, the Virginia Supreme Court held that in order to hold the owner of property liable for injuries sustained by an invitee due to the unsafe condition of the premises, it must be shown that the owner had knowledge of the alleged unsafe condition*, or that it had existed for such a length of time as to make it the owner's duty in the exercise of ordinary care to have discovered it*. *See* 167 S.E.2d at 355 (emphasis added) (citing *Miracle Mart, Inc. v. Webb*, 137 S.E.2d 887, 890 (Va. 1964); *Culpepper v. Neff*, 134 S.E.2d 315, 318, 319 (Va. 1964)). In that case, the court noted that there was an "entire lack of evidence as to how long the snow or ice, if any, had been there." *Cannon,* 167 S.E.2d at 355. In *Harris*, this court granted summary judgment when the plaintiff had no evidence of the time of ice formation. *See* 2006 U.S. Dist. LEXIS 4476, at *18. However, for the reasons that follow, I find that both *Cannon* and *Harris* are distinguishable from the case at bar.

In *Cannon*, the location of the slip-and-fall was a porch of a private residence, not a commercial establishment. Also, the defendant produced evidence that the porch had been cleared of snow and ice, and there was evidence that the plaintiff had walked across a partially snow-covered lawn so that the snow or ice could have adhered to her shoes. *See Cannon*, 167 S.E.2d at 355. The court found that the essentials were lacking with respect to the alleged presence of snow or ice on the porch. *See Cannon*, 167 S.E.2d at 355. Likewise in *Harris*, a case decided by this court, there was undisputed evidence that the parking lot where the plaintiff fell had been cleared of snow and chemically treated with salt the previous day. *See* U.S. Dist. LEXIS 4476, at *3. Moreover, this court noted that on the day of

9

the fall, which occurred at approximately 6:30 p.m., temperatures had risen into the 50's. *See Harris*, U.S. Dist. LEXIS 4476, at *3. Also the defendant presented evidence that it received no complaints of ice in the parking lot on the day of the fall nor had any employee learned of any similar incidents. *See Harris*, U.S. Dist. LEXIS 4476, at *13. This court found that the plaintiff introduced no evidence of the origin of the ice nor the length of time that it existed. *See Harris*, U.S. Dist. LEXIS 4476, at *18.

Here, the parties do not dispute that a snow storm occurred on January 20, 2011, resulting in a large accumulation of snow and ice on the Wolf Hills parking lot. Adkison has presented sworn testimony that he began clearing parking lots in Abingdon, Virginia, at approximately 5:00 a.m. on that morning. Adkison did not slip and fall in the Wolf Hills parking lot until approximately 10:10 a.m., more than five hours after he began clearing snow and ice from the properties for which he was responsible. Frizzell does not allege that the Wolf Hills parking lot had been plowed or treated prior to Adkisons's fall. Moreover, neither Adkison nor the defendant contends that it was snowing, sleeting or that any precipitation whatsoever was falling at the time Adkison fell. Adkison also has provided testimony that, while he worked from 5:00 a.m. until approximately 8:15 a.m., the conditions improved and that it did not snow or freeze between 8:30 a.m. and 10:10 a.m. Adkison has further testified that the Roses department store opened at 9:00 a.m., but that he did not fall until approximately 10:10 a.m. Thus, there is evidence that the parking lot had not been cleared or treated for more than an hour after at least one of the tenants of the shopping center opened for business and for more than five hours after the snow storm had ceased. It is true that Adkison cannot state with specificity how long the ice was there, but I find that such specificity is not required. Instead, he must show only that the ice was present for a

10

sufficient amount of time for the defendant, exercising ordinary care, to have discovered it. Before a question of fact may be submitted to a jury, the evidence must be "sufficient to take the question out of the realm of mere conjecture, or speculation, and into the realm of legitimate inference." *Atrium Unit Owners Ass'n v. King*, 585 S.E.2d 545, 548 (Va. 2003) (quoting *Beale v. Jones*, 171 S.E.2d 851, 853 (Va. 1970)). Given all of the evidence stated above, I find that Adkison has presented sufficient evidence, at this stage of the proceedings, that the icy condition of the parking lot existed for at least five hours after the snow storm had ceased. Therefore, I find that he has provided sufficient evidence to create a genuine issue of material fact as to whether Frizzell had constructive notice of the hazardous condition of the parking lot.

Citing to *Amos v. NationsBank, N.A.*, 504 S.E.2d 365, 368 (Va. 1998), Frizzell further argues that Adkison has failed to show that any duty to remove the snow and ice from the parking lot had arisen at the time Adkison slipped and fell because a premises owner may await the end of a storm to remove snow and ice. In the seminal case on this issue, *Walker v. Mem'l Hosp.*, 45 S.E.2d 898, 903 (Va. 1948), the Supreme Court of Virginia held that a premises owner is allowed a reasonable time after a storm has ended before being required to remove snow and ice. In so finding, the *Walker* court reasoned as follows: "It would be an unreasonable rule which would impose upon an inviter the necessity of repeated excursions into the storm, with the attendant risks of exposure and injury to himself, in order to relieve the invitee of all risk from this natural hazard. Such a burden would place the inviter practically in the role of an insurer of the safety of the invitee." 45 S.E.2d at 907.

I find that Adkison has presented sufficient evidence that it had been a

11

reasonable amount of time after the storm had ended at the time he fell and injured himself. As stated earlier, he testified in one affidavit that when he first arrived at Wolf Hills around 8:30 a.m., "the sun was out and the outside was beginning to warm up to a temperature above freezing." (Adkison Affidavit at 4). In the other affidavit, he stated that the sun was shining and the temperature had risen above the freezing mark. (Adkison Affidavit 2 at 2). He did not fall until approximately 10:10, more than an hour and a half later. Neither Adkison nor the defendant contends that it was snowing, sleeting or that any precipitation whatsoever was falling at the time Adkison fell. Adkison also testified that from 5:00 a.m. until 8:15 a.m., the weather conditions improved and that it did not snow or freeze between 8:30 a.m. and 10:10 a.m. (Adkison Affidavit 2 at 2-3). Additionally, the only argument the defendant makes to the contrary on this issue is that Adkison "was aware of the continuing weather, given that he spoke with his daughter about going sledding" and that "it looked like it was going to be a pretty good day for it." Clearly, having a conversation about going sledding and noting that the day was going to be good for such activity does not evidence that a snow storm was continuing. All of this being said, I am not persuaded by the defendant's argument that no duty to remove the snow and ice had arisen on his part at the time the plaintiff fell, as Adkison has presented evidence that the storm had ended more than five hours prior to his fall.

Aside from notice and the issue of whether a duty had even arisen, Frizzell also argues that he cannot be found negligent because the icy patch that caused Adkison to fall was an open and obvious danger for which he had no duty to warn. It is well-settled in Virginia that a plaintiff who slips and falls as the result of an open and obvious danger is guilty of contributory negligence and is barred from recovery as a matter of law. *See Logan v. Boddie-Noell Enters., Inc.*, 2012 U.S.

12

Dist. LEXIS 5345, at *29 (W.D. Va. Jan. 18, 2012) (citing *Freeman v. Case Corp.*, 118 F.3d 1011, 1014 (4th Cir. 1997)). Whether a hazard is open and obvious is determined using an objective standard. As stated in *Fultz v. Delhaize Am., Inc.*, 677 S.E.2d 272, 274-75 (Va. 2009) (quoting *City of Roanoke v. Sutherland*, 167 S.E. 243, 246 (Va. 1933), "'[w]hen the defect is of such a character that reasonable and prudent [persons] may reasonably differ as to whether an accident could or should have been reasonably anticipated from its existence or not, then the case is generally one for the jury.'" The *Fultz* court further stated that "while a store owner 'must give notice or warning of an unsafe condition which is known to him and is unknown to the invitee, such notice is not required where the dangerous condition is open and obvious, and is patent to a reasonable person exercising ordinary care for his own safety.'" 677 S.E.2d at 274 (quoting *Knight v. Moore*, 18 S.E.2d 266, 269 (Va. 1942)). Whether a danger is open and obvious is a question of fact and should be left to the jury for resolution when "the evidence [is] in conflict." *Richard v. Wal-Mart Stores, Inc.*, 1997 U.S. Dist. LEXIS 13994, at *12 (W.D. Va. Aug. 25, 1997) (quoting *Freeman*, 118 F.3d at 1014).

There is no question here that Adkison saw what ultimately caused him to slip and fall before he exited his vehicle. According to his affidavits, he looked down at the pavement and saw what he described as "wet asphalt." The question before the court then is whether reasonable persons could differ as to whether Adkison could or should have reasonably anticipated an accident from what he believed to be "wet asphalt," but in actuality was black ice. In other words, would the black ice have been patent to a reasonable person exercising ordinary care for his own safety? The circumstances presented by the case at bar are somewhat different from the typical slip-and-fall situation. More specifically, in the usual case, there is no question as to what the hazard at issue actually is. For instance, in

13

*S. Floors & Acoustics, Inc. v. Max-Yeboah*, 594 S.E.2d 908 (Va. 2004), the plaintiff tripped over a stack of tiles in a grocery aisle, and in *Shipp*, 2007 WL 1097894 (applying Virginia law), the plaintiff fell after stepping into an indentation in a parking lot. In those cases, there was no doubt that the hazard was a stack of tiles and an indentation in a parking lot. Even in slip-and-fall cases involving ice, it is not unusual for the plaintiff to admit that he knew of the presence of ice. *See Tate v. Rice*, 315 S.E.2d 385 (Va. 1984); *King v. Bondurant Dev. Corp.*, 315 S.E.2d 390 (Va. 1984); *Kings Markets, Inc. v. Yeatts*, 307 S.E.2d 249 (Va. 1983); *Langhorne Rd. Apartments, Inc. v. Bisson*, 150 S.E.2d 540 (Va. 1966). Here, however, while Adkison states that he saw the patch of ice that caused him to slip and fall, he contends that he did not recognize it as such, but as "wet asphalt" – what he had seen most of the morning. I find that it is just as likely that a reasonable person under like circumstances could have recognized the spot to be wet asphalt as it is that such a reasonable person could recognize it as black ice. I also find that reasonable persons could differ as to whether Adkison exercised ordinary care for his own safety. Particularly, I find that reasonable persons could find that Adkison did not exercise the requisite ordinary care when he saw what he believed to be wet asphalt, but, nonetheless, proceeded to drop 10 inches onto one foot while holding his phone and speaking with his daughter. Conversely, reasonable persons could find that Adkison did exercise ordinary care by exiting his vehicle in the way that he normally did onto what he believed to be only wet asphalt – what he had seen most of the morning while clearing snow and ice. That being the case, I cannot find that the icy patch was an open and obvious hazard which would bar Adkison from recovering from the defendant, and I cannot find that Adkison's actions constituted contributory negligence as a matter of law. Thus, I recommend that the court deny the defendant's Motion on this ground.

14

Lastly, the defendant argues that Adkison's claim is barred because he assumed the risk of slipping and falling. Again, I find that summary judgment is not appropriate on this ground. As the defendant states in his brief, the defense of assumption of the risk acts as a bar to recovery for a defendant's alleged negligence. *See Thurmond v. Prince William Prof'l Baseball Club, Inc.,* 574 S.E.2d 246, 249 (Va. 2003). An implied assumption of the risk defense, as asserted here, requires that the plaintiff must subjectively know of a particular risk and voluntarily assume it. *See* RESTATEMENT (SECOND) OF TORTS §§ 496C, 496D (1965). This means that the court must consider what Adkison "sees, knows, understands and appreciates" in determining whether he assumed the risk of falling in the Wolf Hills parking lot. RESTATEMENT (SECOND) OF TORTS § 496D Comment c (1965); *see also Amusement Slides Corp. v. Lehmann*, 232 S.E.2d 803, 805 (Va. 1977); *Thurmond*, 574 S.E.2d at 249 (application of the defense of assumption of the risk requires use of a subjective standard, which addresses whether a particular plaintiff fully understood the nature and extent of a known danger and voluntarily exposed himself to that danger). Assumption of the risk is an affirmative defense, and the burden of proof lies with the defendant. *See Nelson v. Great E. Resort Mgmt., Inc.*, 574 S.E.2d 277, 280 (Va. 2003); *Young v. Lambert*, 482 S.E.2d 823, 826 (Va. 1997); *see also* RESTATEMENT (SECOND) OF TORTS § 496G (1965).

Frizzell argues that because Adkison was well aware of the weather conditions and had seen similar spots that morning while clearing snow and ice, he understood the risks associated with icy parking lots. First, I find that simply understanding the risks associated with icy parking lots is insufficient to find that a *particular plaintiff* understood the nature and extent of the *particular danger* at issue. Additionally, as stated earlier, the defendant appears to be interpreting

15

Adkison's statement in his affidavit that the black ice he slipped on, which appeared to him to be wet asphalt, was like what he had seen most of the morning, to mean that he was referring to ice. However, it is just as likely that Adkison meant that the black ice that caused his fall looked like nothing more than wet asphalt, which he had seen most of the morning. In fact, in his second affidavit, Adkison stated that when he returned to check on the six properties that he had cleared, "[t]hey appeared to be melting well" and they "simply appeared to be wet asphalt." (Adkison Affidavit 2 at 2). If Adkison believed the spot to be wet asphalt, and not black ice, he cannot be found to have *known* of the particular hazard or to have fully understood the nature and extent of the danger. He also cannot be found to have voluntarily exposed himself to a danger that he did not know existed. Thus, I find that there is a conflict in the evidence on this issue, and I recommend denying summary judgment in the defendant's favor on this ground.

## PROPOSED FINDINGS OF
## FACT AND CONCLUSIONS OF LAW

As supplemented by the above summary and analysis, the undersigned now submits the following, findings, conclusions and recommendations:

1. Adkison has failed to establish that Frizzell had actual notice of the condition of the Wolf Hills parking lot when Adkison fell and injured himself;

2. Reasonable jurors could find that Frizzell had constructive knowledge of the condition of the Wolf Hills parking lot when Adkison fell and injured himself;

3. Reasonable jurors could find that the patch of black ice that caused Adkison's fall was not an open and obvious danger;

16

4. Reasonable jurors could find that Adkison's actions did not constitute contributory negligence;

5. Frizzell has failed to meet his burden of proving that Adkison knew that the patch of black ice existed or that he fully understood and appreciated the risks associated therewith and voluntarily exposed himself to it, nonetheless; and

6. Granting summary judgment in favor of the defendant is inappropriate because there are genuine issues of material fact in dispute.

## RECOMMENDED DISPOSITION

Based upon the above-stated reasons, the undersigned recommends the court deny summary judgment in the defendant's favor.

## Notice to Parties

Notice is hereby given to the parties of the provisions of 28 U.S.C. § 636 (b)(1)(C):

> Within fourteen days after being served with a copy [of this Report and Recommendation], any party may serve and file written objections to such proposed findings and recommendations as provided by rules of court. A judge of the court shall make a de novo determination of those portions of the report or specified proposed finding or recommendation to which objection is made. A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge may also receive further evidence to recommit the matter to the magistrate judge with instructions.

Failure to file written objections to these proposed findings and recommendations within 14 days could waive appellate review. At the conclusion

of the 14-day period, the Clerk is directed to transmit the record in the matter to the Honorable James P. Jones, United States District Judge.

The Clerk is directed to send copies of this Report and Recommendation to all counsel of record.

ENTER: July 10, 2012.

/s/ *Pamela Meade Sargent*
UNITED STATES MAGISTRATE JUDGE